IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In the matter of the Arbitration Between : | |
| : | MISCELLANEOUS ACTION |
| J.D. SHEHADI, L.L.C.       : | |
|     Petitioner,       : | |
| : | |
| v.       : | |
| : | |
| US MAINTENANCE, INC.       : | No. 11-224 |
|     Respondent.       : | |

**MEMORANDUM**

Schiller, J.                                                                                                October 5, 2011

      Frances Halliday-Cornell fell and was injured at a Bed Bath & Beyond in Paramus, New Jersey. She claims that the accident resulted in part from the negligence of US Maintenance, Inc. ("USM") and J.D. Shehadi, L.L.C. ("Shehadi"), the companies responsible for maintaining the flooring that caused her accident. USM and Shehadi had a subcontracting agreement to maintain the flooring at the Bed Bath & Beyond where Halliday-Cornell was injured. An arbitrator ruled that Shehadi, the subcontractor, was required to indemnify USM based on the incident at Bed Bath & Beyond. Now before the Court is Shehadi's petition to vacate the arbitrator's award. In response, USM seeks to confirm the arbitrator's award. For the reasons that following, the Court will confirm the arbitrator's award.

**I.       BACKGROUND**

      USM is a general contractor of services for Bed Bath & Beyond at its various stores. (Shehadi Br. in Support of Pet. to Vacate Arb. Award [Shehadi Br.] at 1.) It subcontracted some of its work to Shehadi, a company that installs floor covering. (*Id*. at 2.) Halliday-Cornell sued Bed Bath &

Beyond and USM for negligence after she fell at a Bed Bath & Beyond. (USM's Br. in Opp'n to Pl.'s Pet. to Vacate Arb. Awards ("USM's Opp'n") Ex. 3 [USM's AAA Br.] at Ex. C [Halladay-Cornell Am. Compl.].) In February of 2011, Halliday-Cornell amended her complaint to include Shehadi as a defendant. Halliday-Cornell alleged that Shehadi: (1) installed, repaired, and/or maintained "the plywood, carpet, vinyl and transition strip" in the store where Halliday-Cornell was injured; (2) was responsible for installing, maintaining, and repairing the floor of the store; (3) negligently installed, maintained, and/or repaired that flooring; and (4) caused injury to Halliday-Cornell as a result of its negligence. (Shehadi Br. Ex. A [Second Am. Compl.] at 6-7.)

According to Shehadi, at the location where Halliday-Cornell fell, USM contracted with another party to design and install the sub-flooring that would be the base for Shehadi's floor covering installation. (Shehadi Br. at 2.) Shehadi was subcontracted to install carpeting and vinyl over the sub-flooring but had no role in the design and installation of the sub-floor. (*Id.*)

Prior to the incident, Shehadi and USM had entered into a subcontractor agreement which provided:

> Indemnification. To the fullest extent permitted by applicable law, [Shehadi] shall defend and hold harmless [USM] and [USM's] customer and [USM] and [USM's] customer's respective officers, directors, employees, agents, shareholders, partners, joint venturers, affiliates, successors and assigns ("Indemnified Parties") from and against any and all liabilities, obligation, claims, demands, causes of action, losses, expenses, damages, fines, judgments, settlements, and penalties, including, without limitation, costs, expenses and attorneys' fees incident thereto, arising out of, based upon, occasioned by or in connection with:
>
> > (1) [Shehadi's] performance of (or failure to perform) [its] duties under this Agreement;
> > (2) a violation of law of any negligence, gross negligence or willful misconduct by you or your affiliates, subcontractors, agents or employees during either [Shehadi's] performance you [*sic*] your [*sic*] duties under this Agreement or otherwise while [Shehadi] [is] on the property of one of

>> [USM's] customers;
> (3) Damage to property and injuries, including without limitation death, to all persons, arising from any occurrence caused by any act or omission of [Shehadi] or [Shehadi's] personnel related to the performance of this Agreement. . . .
>
> The indemnification obligation specified in this paragraph shall be construed as to extend to all legal, defense and investigation costs, as well as other costs, expenses, and liabilities incurred by the Indemnified Parties, including but not limited to interest, penalties, and fees of attorneys and accountants (including expenses), from and after the time when any Indemnified Party receives notification (whether verbal or written) that a claim or demand has been made or is to be or may be made.
>
> Except as otherwise provided by law, the Indemnified Parties' right to indemnification under this paragraph shall not be impaired or diminished by any act, omission, conduct, misconduct, negligence or default (other than gross negligence or willful misconduct) of the Indemnified Parties.

(Shehadi Br. Ex. B [Subcontractor Agreement] ¶ 5B.)

USM tendered its defense to Shehadi, but Shehadi rejected the tender. (Shehadi Br. at 2.) USM then filed for arbitration with the American Arbitration Association in Philadelphia, Pennsylvania. (*Id*. at 2-3.) The arbitrator, Bernard Beitch, Esquire, issued an Interim Award and Final Award, both of which found in favor of USM and against Shehadi. (*Id*. Exs. C & D [Arb. Awards].) Shehadi was ordered to assume the defense and indemnification of USM and Bed Bath & Beyond. Beitch also ordered Shehadi to reimburse USM $43,582.51 in counsel fees and costs. (*Id*.)

## II.  STANDARD OF REVIEW

The Federal Arbitration Act ("FAA") provides that arbitration agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA establishes the strong federal policy in favor of arbitration. *Puleo v. Chase Bank USA, N.A.*, 605 F.3d 172, 178 (3d Cir. 2010).

A district court must confirm an arbitration award unless it is vacated, modified, or corrected as prescribed by the FAA. 9 U.S.C. § 9. The FAA provides that a district court may vacate an arbitration award if: (1) the award was procured by corruption, fraud, or undue means; (2) there was evident partiality or corruption in the arbitrators, or either of them; (3) the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy, or of any other misbehavior by which the rights of any party have been prejudiced; or (4) the arbitrators exceeded their powers or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made. *Id*. § 10. The party seeking vacatur bears the burden of proof. *See Lebeau v. Oppenheimer & Co.*, Civ. A. No. 05-6779, 2006 WL 1737379, at *2 (E.D. Pa. June 23, 2006).

District courts should vacate arbitration awards only in "exceedingly narrow" circumstances and must apply an "extremely deferential" standard of review. *Rita's Water Ice Franchise Co. v. Simply Ices, Inc.*, Civ. A. No. 08-2011, 2008 U.S. Dist. LEXIS 77963, at *6 (E.D. Pa. Oct. 3, 2008) (quoting *Dluhos v. Strasberg*, 321 F.3d 365, 370 (3d Cir. 2003)). There is a "strong presumption" in favor of the arbitration award. *U.S. Steel Mining Co. v. Wilson Downhole Servs.*, Civ. A. No. 00-1758, 2006 U.S. Dist. LEXIS 72737, at *2 (W.D. Pa. Oct. 5, 2006) (quoting *Mut. Fire, Marine & Inland Reins. Co. v. Norad Reins. Co.*, 868 F.2d 52, 56 (3d Cir. 1989)).

### III. DISCUSSION

Shehadi presents two reasons to support its request for vacatur. First, Shehadi contends that the arbitrator exceeded his powers when he found in favor of USM because the Halliday-Cornell complaint does not trigger the indemnification clause in the Subcontractor Agreement. (Shehadi Br.

4

at 4-6.) Second, Shehadi charges that USM has waived its right to arbitrate. (*Id*. at 6-8.)

      **A.**      **Vacatur**

According to Shehadi, its agreement with USM lists six specific instances that trigger a duty to indemnify, all of which refer to the acts or failure to act on the part of Shehadi. It contends that the subcontractor agreement does not require indemnification based on the negligence of USM or a third party. Moreover, Pennsylvania law requires that an indemnification clause should not be construed to indemnify against the negligence of an indemnitee, unless the contract does so in unequivocal terms. Because nothing in the subcontractor agreement unequivocally stated that Shehadi intended to indemnify USM for USM's negligence, Shehadi contends that the "Arbitration Awards should be vacated as exceeding the arbitrator's powers due to the lack of support in the record for the arbitrator's decision." (Shehadi Br. at 6.)

Nothing in the record suggests that the arbitrator exceeded his powers here. When deciding whether an arbitrator has exceeded his powers, a court must determine if the form of the relief awarded is rationally derived either from the parties' agreement or from their submissions to the arbitrator and whether the terms of the relief are rational. *Southco, Inc. v. Reell Precision Mfg. Corp.*, 556 F. Supp. 2d 505, 511 (E.D. Pa. 2008). A court should not vacate an arbitration award unless the terms of the arbitrator's award are "completely irrational." *Ario v. The Underwriting Members of Syndicate 53 at Lloyds for the 1998 Year of Account*, 618 F.3d 277, 295 (3d Cir. 2010) (quoting *Mut. Fire, Marine & Inland Ins. Co.*, 868 F.2d at 56). This standard is met only if there is no support in the record justifying the arbitrator's decision. *Id*.

The parties agree that a contractual indemnity provision in which an indemnitee seeks indemnification for its own negligence may be enforced if expressed unequivocally. Having

reviewed the parties' agreement and Halliday-Cornell's allegations against Shehadi, this Court cannot find that the arbitrator's decisions were irrational. Halliday-Cornell claims she was hurt when the shopping cart she was pushing flipped over because of the uneven floor that Shehadi and USM were responsible for maintaining. The subcontractor agreement states that the right to indemnification "shall not be impaired or diminished by any act, omission, conduct, misconduct, negligence or default . . . of the Indemnified Parties." (Subcontractor Agreement.) This Court cannot conclude that a decision that such language obligates Shehadi to indemnify USM for USM's negligence is irrational. Shehadi argues that the arbitrator incorrectly interpreted the contract, not that the award was irrational. However, "reaching a particular result based on his view of the contract and the evidence submitted, even if the court might reach a different result from that same evidence, does not mean that the arbitrator exceeded his authority." *Southco*, 556 F. Supp. 2d at 511 (citing *Nat'l Clearing Corp. v. Treff*, Civ. A. No. 04-4765, 2005 WL 67075, at *4 (E.D. Pa. Jan.10, 2005); *ColtecIndus., Inc. v. Elliot Turbocharger Group, Inc.,* Civ. A. No. 99-1400, 1999 WL 695870, *5 (E.D.Pa. Sept. 9, 1999)). Mere disagreement with the arbitrator's decision or a belief that the arbitrator committed a serious error is insufficient to vacate or modify the award. *United Transp. Union Local 1589 v. Suburban Transit Corp.*, 51 F.3d 376, 379 (3d Cir. 1995).

Shehadi's claim that the arbitrator exceeded his powers is also a thinly veiled attempt to argue that the arbitrator's decisions were legally incorrect. The Third Circuit has in the past recognized an additional judicially created reason for vacatur for awards made in "manifest disregard of the law." *Roadway Package Sys. v. Kayser*, 257 F.3d 287, 291 n.2 (3d Cir. 2001). Subsequently, however, the Supreme Court held that the FAA provides the exclusive grounds for vacatur and modification and parties may not contractually supplement the statutory grounds for modification

and vacatur to include erroneous legal conclusions and factual findings not supported by substantial evidence. *Hall Street Assoc. v. Mattel, Inc.*, 552 U.S. 576 (2008). ("[T]he text [of the FAA] compels a reading of the §§ 10 and 11 categories as exclusive."). The Third Circuit has yet to rule whether "manifest disregard of the law" remains a valid basis for vacatur in the wake of *Hall Street*. *Paul Green Sch. of Rock Music Franchising, LLC v. Smith*, 389 F. App'x 172, 177 (3d Cir. 2010).

This Court need not resolve the issue because Shehadi has failed to show a manifest disregard of the law by the arbitrator. Shehadi must show that the arbitrator knew of the relevant legal principle and its control of the outcome of the disputed issue but nevertheless "willfully flouted the governing law by refusing to apply it." *Paul Green Sch.*, 389 F. App'x at 177 (citing *Stolt-Nielsen SA v. AnimalFeeds Int'l Corp.*, 548 F.3d 85, 95 (2d Cir. 2008)). During the arbitration, both sides advocated their legal arguments. Shehadi raised the indemnification issue with the arbitrator, who clearly rejected the argument in his decisions. The wisdom of those decisions is not the issue before this Court, which does not hear appeals of arbitration decisions. *Local 863 Int'l Bhd. v. Jersey Coast Egg Producers*, 773 F.2d 530, 534 (3d Cir. 1985) ("The court may not reevaluate supposed inconsistencies in the arbitrator's logic or review the merits of the arbitrator's decision."). The only argument advanced by Shehadi is that "there is no support for the arbitrator's determination." (Shehadi Br. at 4.) Mere legal error is not a basis to vacate an arbitration award. *See Fluke v. Cashcall*, Civ. A. No. 08-5776, 2011 WL 2117547, at *3 (E.D. Pa. May 26, 2011) ("Even an arbitrator's incorrect legal conclusion is entitled to deference.").

**B.   Waiver**

Shehadi argues that USM actively engaged in the Halliday-Cornell litigation by participating in discovery and by insisting to Halliday-Cornell that she add Shehadi as a defendant to her lawsuit.

(Shehadi Br. at 6.) Shehadi contends that it has thus been prejudiced by being forced to litigate the same issue in two venues and in two states. (*Id*. at 7.) USM argues that the arbitrator considered and rejected the waiver argument. USM also challenges Shehadi's contention that it engaged in significant discovery before demanding arbitration. (USM's Opp'n at 8-9.)

That the arbitrator may have decided the waiver issue is irrelevant to this Court because whether a party's litigation conduct constitutes a waiver of the right to compel arbitration is a matter for the Court to decide. *See Ehleiter v. Grapetree Shores, Inc.*, 482 F.3d 207, 221 (3d Cir. 2007). Nonetheless, there is no basis to find that USM waived its right to compel Shehadi to arbitrate their dispute. "[P]rejudice is the touchstone for determining whether the right to arbitrate has been waived." *Hoxworth v. Blinder, Robinson & Co.*, 980 F.2d 912, 925 (3d Cir. 1992). Waiver will ordinarily only be found if the demand to arbitrate came long after the lawsuit commenced and the parties engaged in extensive discovery. *Nino v. Jewelry Exch.*, 609 F.3d 191, 208 (3d Cir. 2010). Courts looks at the following factors when faced with an issue of possible waiver of arbitration rights:  (1) the timeliness of a motion to arbitrate; (2) the degree to which the party seeking to compel arbitration has contested the merits of its opponent's claims; (3) whether that party has informed its opponent of its intention to seek arbitration even if a motion to stay court proceedings has yet to be filed; (4) the extent of its non-merits motion practice; (5) its assent to the district court's pretrial orders; and (6) the extent to which both parties have engaged in discovery.  *Hoxworth*, 980 F.2d at 926-27.  Whether the right to arbitrate has been waived depends on the circumstances and context of the case and a court ultimately must answer whether the party seeking to compel arbitration has "acted inconsistently with the right to arbitrate."  *Nino*, 609 F.3d at 209 (quoting *St. Mary's Med. Ctr. v. Disco Aluminum Prods. Co.*, 969 F.2d 585, 588 (7th Cir. 2002)).

Shehadi's argument for waiver, which is identical to the argument raised in the arbitration, is based on Shehadi's belief that "USM has actively engaged in the underlying lawsuit by participating is discovery and by attending several depositions." (Shehadi's Br. at 6.) Shehadi also argues that USM waived its arbitration rights because USM insisted that Halliday-Cornell add Shehadi as a defendant. Halliday-Cornell filed her original complaint on June 30, 2009 and added USM as a defendant on December 9, 2010. On November 29, 2010, USM's insurance carrier wrote to Shehadi that USM "had been notified of [the Halliday-Cornell lawsuit]" and that USM was tendering its defense to Shehadi. (USM's Opp'n Ex. 3 [USM's Arb. Br. & Exs.].) On January 14, 2011, USM again formally demanded defense and indemnification from Shehadi on Halliday-Cornell's claim. (*Id*.) On January 26, 2011, USM filed a demand for arbitration with the American Arbitration Association. (*Id*. Ex. 1 [Demand for Arb.].)

Shehadi has failed to demonstrate USM waived the right to arbitrate its claims against Shehadi. Although the original complaint was filed on June 30, 2009, USM was not added as a defendant until December 9, 2010, although it had tendered its defense to Shehadi before that date. Nonetheless, USM demanded arbitration less than two months after it was sued. Though Shehadi maintains, "to the best of [its] knowledge," that USM was extensively involved in the discovery of the Halliday-Cornell litigation, it presents no evidence to support that assertion. Shehadi also fails to illuminate the relevance of its contention that, "upon information and belief," USM insisted that Shehadi be joined as a defendant. Furthermore, Shehadi has no evidence to support this belief and because Halliday-Cornell had free will to sue any defendant over which she could maintain a claim, her decision to sue Shehadi is of no moment in deciding whether USM waived its arbitration rights as to Shehadi. The record does not indicate USM acted in a manner inconsistent with the right to

arbitrate, nor has Shehadi demonstrated prejudice.

## IV.     CONCLUSION

Shehadi has failed to demonstrate that the arbitrator exceeded its power, and it has also failed to demonstrate that USM waived its right to arbitrate. Shehadi's petition to vacate is therefore denied. The Court grants USM's request to confirm the arbitrator's award. An Order consistent with this Memorandum will be docketed separately.